**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROSA WARE,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. 3-12-CV-0291-RFC** |
| | § | |
| **CAROLYN W. COLVIN,**[1] | § | |
| **Acting Commissioner of Social Security** | § | |
| **Administration,** | § | |
| **Defendant.** | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This is a civil action seeking judicial review of an administrative decision. Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c), and Rule CV-72 and Appendix C to the Local Court Rules for the Western District of Texas.

Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner) denying her applications for disability insurance benefits (DIB), widow's insurance benefits (WIB), and supplemental security income (SSI) under Titles II and XVI of the Social Security Act, from her amended alleged onset date of November 30, 2009, through the date of the final administrative decision on August 23, 2011. For the reasons set forth below, this Court orders that the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), she is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of §205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL HISTORY

On May 18, 2010, Plaintiff filed applications for DIB, WIB, and SSI, alleging a disability onset date initially of May 10, 2008, which was amended to November 30, 2009.  (R:40, 166, 170, 178)   After her applications were denied initially and on reconsideration, Plaintiff requested, appeared, and testified at a hearing held on July 20, 2011.  (R:34-51, 85-89)  The Administrative Law Judge ("ALJ") issued a decision on August 23, 2011, denying all benefits.  (R:13-23)  The Appeals Council denied review.  (R:1-6)

## ISSUES

Plaintiff presents the following issues:

1.     Whether the ALJ failed to properly accommodate Plaintiff's moderate limitations in concentration, persistence, and pace; and

2.     Whether the ALJ erred by allegedly mechanically applying the closely-approaching-advanced-age category.

(Doc. 21 at 2; Doc. 23 at 2)

## DISCUSSION

### I.     Standard of Review

This Court's review is limited to a determination of whether the Commissioner's decision is supported by substantial evidence, and whether the Commissioner applied the proper legal standards in evaluating the evidence.  *See* 42 U.S.C. § 405(g); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).  Substantial evidence "is more than a mere scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 390

(1971).  The Commissioner's findings will be upheld if supported by substantial evidence. *Masterson*, 309 F.3d at 272.

In applying the substantial evidence standard, the court may not reweigh the evidence, try the issues *de novo*, or substitute its own judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision.  *Masterson*, 309 F.3d at 272.  Conflicts in the evidence are for the Commissioner and not the courts to resolve.  *Id.*; *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  A finding of no substantial evidence will be made only where there is a conspicuous absence of credible choices or no contrary medical evidence.  *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).

## II.    Evaluation Process

The ALJ evaluates disability claims according to a sequential five-step process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically-determinable physical or mental impairment; (3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; (4) whether the impairment(s) prevent the claimant from performing past relevant work; and (5) whether the impairment(s) prevent the claimant from doing any other work. 20 C.F.R. § 404.1520.  The claimant bears the burden of proof at the first four steps of the analysis.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  Prior to making the step-four determination, the ALJ assesses the Plaintiff's residual functional capacity (RFC), which is the most an individual can still do despite limitations.  20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96-8p.  Once the claimant establishes that she suffers from a severe impairment preventing her from doing past relevant work, the Commissioner bears the burden of showing that, considering the claimant's RFC, age, education,

3

and work experience, there is work existing in significant numbers in the national economy that the claimant can perform. *Audler v. Astrue*, 501 F.3d 446, 447-448 (5th Cir. 2007); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden can be met by relying on either the Medical-Vocational Guidelines (the grids) or the testimony of a vocational expert. *Id*.

### III.   The ALJ properly accommodated Plaintiff's moderate limitations in concentration, persistence, and pace.

Plaintiff claims that the ALJ failed to accommodate Plaintiff's "moderate limitations in concentration, persistence, and pace" and erred by failing to include such limitation in her RFC and hypothetical question to the vocational expert. (Doc. 21 at 3-7) She contends that the ALJ failed to make a narrative, function-by-function assessment of work-related mental activities, committing the same legal error as was made in *Otte v. Commissioner*, NO. 3:08-CV-2078-P, 2010 WL 4363400 at *6 (N.D. Tex. Oct. 18, 2010), by substituting the basic mental demands of unskilled work for the full and fair function-by-function mental RFC analysis. (Doc. 21 at 4) She argues that the ALJ should have recognized and accommodated Plaintiff's inability to work under stressful, fast- paced situations requiring a certain pace to meet quotas. (*Id*.) Plaintiff emphasizes record evidence that she asserts supports a more limited RFC finding. (*Id*., at 4-7)

In assessing the severity of Plaintiff's mental impairments of depression and anxiety, the ALJ found that Plaintiff had mild restrictions with activities of daily living and social functioning and moderate difficulties with regard to concentration, persistence, or pace. (R:17-18) The ALJ determined that Plaintiff had an RFC to perform light work, but should avoid workplace hazards, and that she can understand, carry out, and remember simple, but not complex or detailed instructions, can use judgment to make simple, work-related decisions with few variables, and

should have no interaction with the general public. (R:18) An RFC with each of these elements was presented to the vocational expert. (R:49-50) The expert testified that the hypothetical individual would not be able to perform any of Plaintiff's past work, but that there exist other unskilled occupations Plaintiff could perform with such an RFC, including cleaner/polisher, electronics worker, and assembler of small products. (*Id*.)

The ALJ did not err by failing to include the "moderate limitations in concentration, persistence, and pace" finding in either Plaintiff's RFC or the hypothetical question to the expert. That finding was part of the step-two special technique to determine whether a claimant has a severe mental impairment; it is not an RFC finding. *See* 20 C.F.R. §§ 404.1520a, 416.920a, pt. 404, subpt. P, app. 1, §12.00 (describing paragraphs B and C of the mental disorders listings); SSR 96-8p, 1996 WL 374184. Nor did the ALJ err in failing to articulate a function-by-function analysis of all of Plaintiff's abilities. While the ALJ must consider all of Plaintiff's abilities, not all considerations must be articulated in the written opinion; the ALJ must explain how the evidence supports the RFC determination. *See* SSR 96-8p, 1996 WL 374184, at *7. The ALJ complied with the requirements of *Otte* and SSR 96-8p by specifically considering various work-related mental functions and incorporating such specific limitations into the hypothetical question and the RFC; the ALJ did not presume that a general limitation for only unskilled work would accommodate all of Plaintiff's mental restrictions. (R:19-21, 49-50)

Plaintiff's final argument challenges the sufficiency of the evidence to support the ALJ's RFC determination excluding an inability to work under stressful, fast paced situations requiring a certain pace to meet quotas. (Doc. 21 at 4-7) Plaintiff argues that the record evidence supports such limitation. In addition to Plaintiff's own subjective reports in applying for benefits, Plaintiff cites

5

to several medical records she contends support her claim.  (Doc. 21at 5-7) She also cites to the consultative state agency psychiatrist's mental RFC determinations (R:444), and the examining psychiatrist's report (R:479).  *Id*.  While Plaintiff emphasizes record evidence that might support a more restrictive RFC, this Court is limited to determining whether there is substantial evidence to support the ALJ's determination, and this can be less than a preponderance of the evidence.  *See Masterson*, 309 F.3d at 272.

On February 4, 2010, at a follow up appointment with her neurologist, Dr. Maldonado, Plaintiff reported feeling depressed, forgetful, not wanting to leave her home, and having crying spells; she denied having suicidal thoughts.  (R:285)  Dr. Maldonado added Zoloft/Sertraline to Plaintiff's prescriptions and noted that he would like her to see a psychiatrist.  *Id*.

On March 23, 2010, Plaintiff was seen with chief complaints of weight gain and muscle aches.  (R:324-325)  She reported having had depression, daily crying, and anxiety with suicidal thoughts for years and noted that, though her neurologist had recommended that she be evaluated by a psychiatrist and had prescribed Sertraline, she had not scheduled an appointment nor filled the prescription; a psychiatric consult was noted.  *Id*.

On April 19, 2010, Plaintiff was seen with chief complaints of diarrhea, stomach pain, and lab results.  (R:320-321) Mood problems and anxiety were noted, as was the fact that she had neither scheduled an appointment with a psychiatrist nor filled her prescription for Sertraline.  *Id*.

On May 6, 2010, Plaintiff was seen with chief complaint of right ankle pain; anxiety was noted in the review of systems.  (R:297)

On September 21, 2010, the state consultative examining psychiatrist, Dr. Rodriguez-Chevres, assessed a GAF score of 48 for Plaintiff, indicating serious limitations in social and or

6

occupational functioning. (R:476-479); *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), p. 34 (4th ed. 1994). Dr. Rodriguez-Chevres noted that Plaintiff's capacity for industrial, social, and academic adaptability was hindered due to her mental condition. (R:479) The ALJ gave limited weight to the opinion of the consultative examining consultant, noting that the GAF assigned was not based on clinical signs and findings or other objective evidence provided in the record. (R:21) Significantly, Dr. Rodriguez-Chevres acknowledged that Plaintiff was not under the care of a mental health professional and that she might improve with such care, but by how much could not be known. (R:479) Also, it appears that Dr. Rodriguez-Chevres's opinion was based on an understanding that Plaintiff had not worked since 2005, and that her anxiety increased when she had to find a job, because it was difficult for her to find one. (R: 476-479) Depression and anxiety resulting from situational problems such as the inability to work or poor health do not fall within the ambit of mental impairment contemplated as a basis of disability. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987), citing *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987).

On July 6, 2010, the state consultative psychiatrist, Dr. Nilima Mehta, in assessing Plaintiff's mental RFC, checked the moderate limitations boxes with respect to Plaintiff's ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without unreasonable number and length of rest; and (6) to respond appropriately to changes in work settings. (R:443-444) Dr. Mehta elaborated on her findings, however, by stating that Plaintiff could understand, remember and carry out detailed but not complex instructions, could

make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to changes in routine work settings.  (R:445)  The ALJ gave significant weight to this assessment, finding it to be consistent with the record as a whole and with the RFC assessed.  (R:21)

The ALJ considered several factors in assessing Plaintiff's credibility and her RFC.  First, Plaintiff was not very restricted in her daily activities.  (R:20-21)  She was independent in her self-care and activities of daily living, living by herself, making her own food, taking her own medication, shopping, and visiting with her son.  (R:240-243, 459)  Second, Plaintiff's treatment for her severe depression/anxiety had been relatively routine and conservative.  (R:20-21)  She neither sought nor required frequent emergency or immediate inpatient or outpatient treatment during the relevant period.  (R:20-21)  She presented to an emergency room once in 2006 and once in 2008 related to anxiety, both of which were prior to her amended alleged onset date.  (R:20, 272, 503) Plaintiff had only been conservatively treated with prescribed antidepressants.  (R:20, 196, 324)  The ALJ also noted that evidence in the record indicated that when Plaintiff was treated previously, she showed improvement.  (R:20, 330 (treatment notes from November 7, 2008))  A condition that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See* 20 C.F.R. § 404.1530; *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988), citing *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).  The Court additionally notes that Plaintiff did not follow her treating doctors' orders to be evaluated and obtain treatment from a psychiatrist and was slow to fill medications prescribed even after being given a lower-cost option.  (*See* R:320-321, 324-325, 479)  Failure to seek treatment or regular medical care or to follow prescribed treatment, where no good reason exists, is an indication of non-disability.  *See Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990).

The ALJ noted that none of Plaintiff's treating or examining physicians imposed specific work-related restrictions or limitations. (R:20)  All documented evaluations indicated that she was able to cooperate and relate in an appropriate manner.  (R:20) The ALJ also noted and gave slight weight to her own observations of Plaintiff at the hearing, as providing no evidence of debilitating symptoms.  (R:21)

The ALJ's RFC determination is substantiated by the record.  Plaintiff is not entitled to relief on this claim.

**IV.    The record lacks substantial evidence to find that the ALJ considered the use of the older age category or to find that such failure was harmless.**

The ALJ's decision issued on August 23, 2011.  (R:23)  Plaintiff's birthday is September 10, 1956.  (R:22)  Thus, she was over 54 years and 11 months old at the time of the ALJ's decision; or 18 days short of her 55th birthday.  With respect to age, the ALJ's decision noted only Plaintiff's date of birth and that she was 51 years of age on the alleged disability onset date.  (R:22)

In considering, at the fifth step, whether there is other work that Plaintiff can perform, the ALJ considers relevant vocational factors, including age.   20 C.F.R. §§ 404.1520(a)(4)(v), 404.1563(a)(4)(v).  There are three age categories—the higher the category, the more lenient the standard for proving disability: (1) younger person (18-49); (2) a person closely approaching advanced age (50-54); and (3) a person of advanced age (55 or older).  *See* 20 C.F.R. § 404.1563(c)-(e); SSR 83-10, 1983 WL 31251, at *8.  However, the regulations provide that:

> [the Commissioner] will not apply the age categories mechanically in a borderline situation.  If [a claimant is] within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will consider whether to use the older age category after evaluating the over all impact of all the factors of [the claimant's] case.

20 C.F.R. §§ 404.1563(b) and 416.963(b); *Application of the Medical-Vocational Guidelines in Borderline Age Situations, Soc. Sec. Admin., Office of Hearings and Appeals, Hearings, Appeals and Litigation Law Manual* (HALLEX), II-5-3-2, 2003 WL 25498826 (effective 1993).

Plaintiff contends that the ALJ erred by mechanically applying the "individual closely approaching advanced age" category without considering whether application of the older age category would have been more appropriate in her case where the Grid Rule at the older age category, Rule 202.06, corresponding to the rule cited by the ALJ at the younger age category, Rule 202.14, would have directed a finding of disabled.  (Doc. 21:2, 8-10, citing 20 C.F.R. 404, Subpt. P., App. 2, Rules 202.06)  Plaintiff maintains that the ALJ relied solely on Plaintiff's age at the date of onset of her disability, and failed to consider her age at other points in time relevant to the ALJ's decision.[2]  (*Id.*, at 8)  Plaintiff argues that there is no indication that the ALJ even recognized the significance of the age category to be applied in this case or that the Appeals Council considered whether Plaintiff's case warranted application of the higher age category.[3]  (Doc. 21 at 9, citing 20 C.F.R. § 404.1563(b))

---

[2]  Plaintiff argues that his age at the time of the Appeals Council's decision denying review should have been taken into account and would have led to a finding of disabled.  (Doc. 21 at 8-9)  Although Plaintiff is correct that the ALJ's decision becomes final when the Appeals Council denies a request for review, its review remains limited to the relevant period of time at issue, that is, through the date of the ALJ's decision.  *See* 20 C.F.R. § 404.1563(b) ("We will use each of the age categories that applies to you during the period for which we must determine if you are disabled.");  *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005).  The Court will therefore constrain its review to Plaintiff's alternative argument, whether the ALJ considered Plaintiff's age at the time of the ALJ's decision, when Plaintiff was within 18 days of her 55th birthday, and whether the ALJ applied the age categories mechanically or instead considered whether the older age category would be more appropriate.  (*See* Doc. 21 at 9-10)

[3]  The Court notes that Plaintiff did not raise the borderline age issue at the hearing before the ALJ-neither when stating her age, when the ALJ identified her age category to the vocational expert as closely approaching advanced age (R:38, 49), nor in the memorandum argument submitted to the Appeals Council. (R:8-9)

### A.      The ALJ was required to consider applying older age category

On the date the ALJ's decision issued, Plaintiff was within 18 days of her 55th birthday, sufficiently close to potentially present a borderline age situation according to Section 404.1563(b). Further, the grids would have directed a finding of disabled if only the age criteria were altered from the grid rule the ALJ identified as applicable, using the advanced age rather than the closely approaching advanced age category.[4] *Compare* 20 C.F.R. 404, Subpt. P., App. 2, Grid Rules 202.06 and 202.14.  Defendant does not dispute these issues. (*See* Doc. 23 at 9-12)

Defendant's argument that Plaintiff experienced no progressively adverse additional vocational limitations as she approached the higher age category fails to track the guidance provided in HALLEX II-5-3-2.  (Doc. 23 at 10).  Under the "sliding scale" approach set forth, "progressively more additional vocational adversity(ies)" are required to be shown the further the claimant is away from the older age category.  HALLEX II-5-3-2, 2003 WL 25498826.  Or, conversely, the amount of additional adversity required to justify use of the older age category diminishes the closer the older age category looms.  *See id*.  Defendant is correct, however, that "[u]se of the higher age category is not automatic" where a borderline situation exists under Section 404.1563(b); to justify the use of the older age category, there must be additional vocational adversity(ies).  *Id*.  Examples provided include: "an additional element(s) which has adverse vocational implications" and "an additional impairment(s) which infringes upon—without substantially narrowing—a claimant's remaining

---

[4]  Although the ALJ did not determine the question of skills transferability, finding it to be immaterial to the decision, she did cite to grid rule 202.14, which presumed non-transferability of skills.  (R:22)  The ALJ's citation to the grid rule containing non-transferable skills as well as the VE's testimony that none of the jobs identified would have utilized skills Plaintiff had acquired in her previous work support Plaintiff's contention that, had the older age category been applied, she would have been found disabled under grid rule 202.06, thus presenting a borderline age situation.  If Plaintiff's skills were found to be generally transferable, grid rule 202.07 would have directed a finding of not disabled even at the older age category.  (R:22; 20 C.F.R. 404, Subpt. P., App. 2, Rule 202.07)

occupational base[.]" *Id*.  The Program Operations Manual System (POMS) provides even more examples of what may constitute additional vocational adversities, including nonexertional limitations such as the environmental limitation of avoiding exposure to unprotected heights, mental limitations involving inability to understand and remember detailed instructions or limitations in social interaction such as the inability to interact appropriately with the general public.  POMS, DI 25015.005, Age as a Vocational Factor, https://secure.ssa.gov/poms.nsf/lnx/0425015005 (last visited September 5, 2014).  While there are "no fixed guidelines as to when a borderline situation exists[,]" (Doc. 23 at 9, fn 4, quoting SSR 83-10, 1983 WL 31251, at *8), absent any obvious inconsistency between the language of the regulation and the agency's interpretation of it, the Commissioner has discretion in determining when a borderline situation is present and the Commissioner's interpretation deserves considerable deference.  *Harrell v. Bowen*, 862 F.2d 471, 479 (5th Cir. 1988).

The ALJ's RFC finding identified several non-exertional vocational adversities not accounted for by the criteria accommodated by the grid rules including: avoiding workplace hazards such as unprotected heights; understanding, carrying out, remembering, and working with only simple (not complex or detailed) instructions requiring use of judgment to make only simple decisions with few variables; and having no interaction with the general public.  (R:18)  The ALJ found such additional limitations would impede Plaintiff's ability to perform all or substantially all of the requirements of light work and would tend to infringe on the remaining occupational base.  (R:22)  Additionally, having only 18 days until Plaintiff reached her 55th birthday, the amount of additional adversity required to justify use of the older age category would be minimal.  *See* HALLEX II-5-3-2, 2003 WL 25498826.

Even the existence of additional vocational adversity does not mandate application of the higher age category. The ALJ retains discretion in determining which age category to apply. The existence of such additional vocational adversity, however, weighs in favor of applying the older age category, such that Plaintiff's borderline situation warranted consideration by the ALJ. While the Commissioner may not have been required to apply the higher age category, the Court finds that, on the facts of this case, the ALJ was required to consider whether such application would be more appropriate than that of Plaintiff's chronological age category.

**B.      The record lacks evidence that the Commissioner considered the older age category**

Defendant maintains that the ALJ is not required to articulate in the decision that the ALJ considered whether the application of the older age category would be more appropriate in a borderline age situation or to provide the reasoning for which age category was applied. (Doc. 23 at 10-11) While the regulations do require the ALJ's decision to "give[] the findings of fact and the reasons for the decision[,]" 20 C.F.R. § 404.953(a), the regulations themselves do not specifically impose upon the ALJ a procedural requirement to acknowledge the existence of, or make specific factual findings regarding, borderline age situations. Section 404.1563(b) imposes only a duty to "consider whether to use the older age category after evaluating the overall impact of all the factors of your case." 20 C.F.R. § 404.1563(b).

While the regulatory guidance is not entirely consistent where no additional vocational adversities exist, where such additional adversities are found, however, the guidance appears consistent that the ALJ's decision should address the borderline age situation. The POMS state that "[w]hen a borderline age situation exists, you must explain your decision to use the next higher age category or your decision to use the claimant's chronological age and explain the specific factors

13

supporting your determination."   POMS DI 25015.005.   The HALLEX states that "[a]bsent a showing of additional adversit(ies) . . . [t]he adjudicator need not explain his or her use of the claimant's chronological age[,]" suggesting that where additional adversities do exist, such explanation is needed.  *See* HALLEX 2003 WL 25498826.

There is a split of authority, both between the Circuit Courts of Appeals and within the Fifth Circuit, regarding whether and to what extent the ALJ's decision must explicitly acknowledge and explain a borderline age situation decision.  The Third, Eighth, and Tenth Circuits have held that for the court to be able to perform a review of the decision, the ALJ's decision must provide some explanation of the age category applied, or at least acknowledge that a borderline situation was considered.  *See Manning v. Colvin*, No. 3:13-CV-2178-D, 2014 WL 266417 at *6 (N.D. Tex.  Jan. 24, 2014) (gathering cases, citing *Philips v. Astrue*, 671 F.3d 699, 706-707 (8th Cir. 2012); *Lucas v. Barnhart*, 184 Fed. Appx. 204, 208 (3d Cir. 2006); *Daniels v. Apfel*, 154 F.3d 1129, 1134-1136 (10th Cir. 1998); *Kane v. Heckler*, 776 F.2d 1130, 1132-1134 (3d Cir. 1985)).  Within the Fourth Circuit, most courts have also found that "the borderline age analysis must be explicit in order for the reviewing court to determine if the decision was based on substantial evidence."  *See Ash v. Colvin*, No. 2:13-CV-47, 2014 WL 1806771 (N.D. West Virginia May 7, 2014) (gathering cases, citing *Pickett v. Astrue*, 895 F. Supp. 2d 720, 724-725 (E.D. Va. Sept. 7, 2012)(gathering cases)).

The Sixth, Ninth, and Eleventh Circuits have rejected such a *per se* procedural requirement, holding that the ALJ is not required to explain in the decision whether a borderline age situation was considered.  *See Manning*, 2014 WL 266417 at *6 (gathering cases, citing *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071-1072 & n. 4 (9th Cir. 2010); *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399-403 (6th Cir. 2008); *Miller v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 631, 635-36

14

(11th Cir. 2007) (*per curiam*)).   In *Bowie*, the Sixth Circuit found that there was no *per se* procedural requirement to address borderline age categorization in every borderline case, but suggested in *dicta* that where the record indicates that use of a higher age category may be appropriate, an ALJ may need to provide some indication that the borderline age categorization was considered in order to satisfy a reviewing court that the decision is supported by substantial evidence.  *Bowie*, 539 F.3d at 399-401.   In that case, the court found that there were no additional vocational adversities and— supported by regulations stating that where no additional adversity exists, an ALJ need not explain use of chronological age— found that the decision was supported by substantial evidence without proof that the ALJ had considered the borderline age range.  *Id*.  Even on those facts, a strong dissent would have required the ALJ to at least acknowledge consideration of the borderline age issue.  *Id*. at 403.

This Court has found no pronouncement by the Fifth Circuit on the issue and the lower courts appear to be split.   Some courts have implicitly assumed, at times without addressing the issue at all, that the ALJ properly considered the borderline situation and that the age category applied was applied as a result of the ALJ's determination of the issue.   *See Singleton v. Astrue*, No. 3:11-CV-2332-BN, 2013 WL 460066 (N.D. Tex. Feb. 7, 2013) (recognizing the existence of a borderline age situation requiring consideration, but not addressing whether there was any evidence in the record that the ALJ actually recognized and considered it); *Fosha v. Barnhart*, 372 F.Supp.2d 948, 956-57 (S.D. Tex. 2005) (not explicitly addressing whether there is evidence that the ALJ recognized and considered the borderline age situation, but noting that the ALJ stated the plaintiff's age category and that such decision is discretionary and because the plaintiff's actual age clearly fit the age category identified such decision was substantially supported).  In *Flores*, the court implicitly found that the

ALJ had recognized the borderline age situation and assumed that the ALJ had therefore considered it as required by the regulations the ALJ cited, stating that the ALJ acknowledged the regulation regarding borderline age situations and noted that Flores was 49 years of age—classified as a "younger person"—and was soon to be 50 years of age—which would classify him as "closely approaching advanced age"— and found that the ALJ's failure to pronounce a factual finding or provide an analysis as to whether the older age category should be applied was not a fatal omission. *Flores v. Astrue*, No. 5:09-CV-214-BG, 2010 WL 3858173 at *3 (N.D. Tex. Aug. 30, 2010), rec. adopted by 2010 WL 3856435 (N.D. Tex. Oct. 4, 2010).  Some courts have found sufficient as evidence demonstrating that the requisite consideration occurred the ALJ's statement of the claimant's birth date, age, and corresponding defined age category—or less.  *See e.g., Bowie*, 539 F.3d at 398. This Court cannot agree.  Such statements appear in virtually every ALJ decision that proceeds to step five, regardless of whether a borderline age situation requiring consideration exists.

Several district courts in the Fifth Circuit have "rejected a *per se* requirement that the ALJ must *always* explain in his written decision whether he considered the borderline age issue, but [ ] in cases where there is no explanation of the issue and there is an indication that the claimant might be considered disabled under a different guidelines rule, a remand is proper."  *See Manning*, 2014 WL 266417 at *6-7 (emphasis in original) (citing *Singleton,* 2013 WL 460066; *Stout v. Astrue*, 2012 WL 1020179 at *10 (E.D. La. Feb. 22, 2012), rec. adopted by 2012 WL 1020174 (E.D. La. Mar. 26, 2012)); *see also Horsley v. Colvin*, No. 1:12-CV-273-DAS, 2014 WL 1213467 at *4 (N.D. Miss. March 24, 2014) (remanding where there was no indication in the decision that the ALJ recognized the borderline age issue or made any decision as to that issue; finding that if the borderline

16

determination was omitted, the grid rules were necessarily mechanically applied in violation of the regulations).

In *Manning*, the court rejected a *per se* requirement that an ALJ explain whether he considered the borderline age issue in every case, finding that whether such an explicit acknowledgment were necessary depends on the circumstances of each case; where the court is unable to determine from the record whether the ALJ considered the borderline age issue, the court cannot conclude that the ALJ's decision is supported by substantial evidence. *Manning*, 2014 WL 266417 at *7.  In *Manning*, as in this case, the ALJ's decision noted the claimant's birth date, but mentions the claimant's age not as of the date of the decision or at the time of the hearing, but only as of the date of the alleged onset of disability, which was years earlier.  *Id*.  Nor did the ALJ's citation to 20 C.F.R. § 404.1563 include specific citation to subsection (b), the specific provision governing borderline age situations.  *Id*., at *7 fn 10.   Also as in this case, the ALJ noted that the claimant's ability to perform all or substantially all of the requirements required by the relevant grid rule had been impeded by additional limitations.  *Id*., at *8.

In *Stout*, the court remanded for further consideration, noting that though it was made clear at the hearing that the plaintiff's date last insured was within months of the next age category, the ALJ did not appear to be aware of his discretion to apply the older age category, made no specific mention of a borderline-age issue, and failed to articulate a non-mechanical conclusion about which age category was appropriate for plaintiff.  *Stout*, 2012 WL 1020179 at *11.

The court in *Horsley* also remanded to the Commissioner because, although there may have been substantial evidence to support the use of the plaintiff's chronological age, the ALJ's decision did not demonstrate that the ALJ recognized the case as a borderline age case, or that the ALJ made

any decision on that issue to exercise her discretion to decline to move plaintiff into the advanced age category. *Horsley*, 2014 WL 1213467 at *4-5.

In this case, the ALJ's August 23, 2011, decision states only Plaintiff's birth date of September 10, 1956, and that she was 51years old on her alleged onset date. (R:22) At the hearing held on July 20, 2011, the Plaintiff stated that she was 54 years old. (R:38) The ALJ also stated in her hypothetical question to the vocational expert that Plaintiff's age category was "closely approaching advanced age." (R:49)

This Court finds such references to Plaintiff's age insufficient to evince that the ALJ recognized or considered Plaintiff's borderline age situation as required by the regulations. In fact, the Court finds no evidence in the record that the ALJ did so.

There may be substantial evidence to support the use of Plaintiff's chronological age, but there is nothing in the decision to indicate that the ALJ considered whether use of the older age category would be more appropriate or made the determination that it would not; it does not reflect exercise of discretion in declining to move Plaintiff into the advanced age category. If the borderline determination was not made, the grids have been applied in a mechanical manner in violation of the regulation.

The Fifth Circuit stated that because "borderline" is not specifically defined, the Secretary has discretion in determining when a situation is "borderline[]" and that the primary issue is the reasonableness of the Secretary's use of his discretion. *See Harrell*, 862 F.2d at 479 & fn. 9. On this record, there is not sufficient evidence for the Court to conclude that the ALJ did consider the borderline age situation and whether the older age category would be more appropriate. The Court cannot evaluate the reasonableness of the ALJ's discretion where the Court cannot satisfy itself that

18

the ALJ in fact exercised the required discretion.  Thus, the Court cannot conclude that the ALJ did not apply the age categories mechanically, as prohibited by the regulations.  Unable to conclude that the ALJ's determination does not rest on legal error, the Court must determine whether any such error would be harmless on the facts of this case.

**C.     Vocational expert testimony does not render harmless the ALJ's failure to consider whether application of older age category would be more appropriate**

Defendant argues that there is no error in not applying the older age category or that any such error is harmless where the ALJ obtains vocational expert testimony, as was done in this case.  (Doc. 23 at 10, citing *Underwood v. Bowen*, 828 F.2d 1081, 1083 (5th Cir. 1987)))  Defendant mischaracterizes Plaintiff's claim of error.  Furthermore, the case Defendant cites, *Underwood*, is distinguishable from the case at hand: although a vocational expert did testify to available jobs within the complainant's functional capabilities in *Underwood*, the claimant was ten months from the higher age category on the latest date the ALJ was required to consider in his decision, the ALJ did not assess any nonexertional or additional limitations, and the only evidence that the claimant's "ability to adapt was less than the level established under the grids" was a doctor's report suggesting that the claimant had prematurely aged.  *Underwood*, 828 F.2d at 1082-1083, citing *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir. 1984).  Thus, there was no additional vocational adversity identified by the ALJ requiring consideration of the older age category, even if it otherwise presented a borderline age situation.

In the sequential evaluation process, the determination of the appropriate age category should logically be made after assessing RFC and *before* identifying the applicable grid rule.  *See* 404.1520(a)(4)(iv)-(v).  The purpose of the grid rules is twofold: to provide more uniform and

19

consistent judgments and to relieve the ALJ of the obligation to obtain vocational expert testimony

in each case.  SSR 83-10 at *1 (1983).  The grids:

> relieve the Secretary of the need to rely on vocational experts by establishing through
> rulemaking the types and numbers of jobs that exist in the national economy.  They
> consist of a matrix of the four factors identified by Congress— physical ability, age,
> education, and work experience—and set forth rules that identify whether jobs
> requiring specific combinations of these factors exist in significant numbers in the
> national economy.   Where a claimant's qualifications correspond to the job
> requirements identified by a rule, the guidelines direct a conclusion as to whether
> work exists that the claimant could perform.  If such work exists, the claimant is not
> considered disabled.

*Heckler v. Campbell*, 461 U.S. 458, 461-462 (1983) (footnotes omitted).  Although the grid rules

may not be used to direct a finding of non-disability where the plaintiff's RFC does not exactly

match the criteria of any grid rule—such as when there is a non-exertional impairment or when the

claimant cannot do a full range of work at the given exertional level—when the grids direct a finding

of disabled based solely on the grid criteria, such finding is conclusive and obviates any need for

vocational expert testimony.   *See* 20 C.F.R. §§ 404.1569a(d), 416.969a(d) (Where there are

combined exertional and nonexertional limitations, "we will not directly apply the [grid] rules []

unless there is a rule that directs a conclusion that you are disabled based upon your strength

limitations; otherwise the rules provide a framework to guide our decision."); *Fraga*, 810 F.2d at

1304 (requiring Commissioner to produce vocational expert testimony or similar evidence to

establish existence of jobs where nonexertional impairments exist and grid rule otherwise applicable

indicates not disabled);  *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) (same)*, Lawler v.

Heckler*, 761 F.2d 195, 198 (5th Cir. 1985) (same).   There is no provision in either the Social

Security Act or the regulations for an ALJ to rebut a conclusion of disabled in the grids by the use

of vocational expert testimony.  *See* SSR 83-5a, 1983 WL 31250; *Horsley*, 2014 WL 1213467 at *5.

In light of Plaintiff's additional limitations, the ALJ used the grids as a "framework" to determine whether sufficient jobs remained within Plaintiff's RFC and relied on vocational expert testimony to establish that Plaintiff could still work given her limitations.  (R:22)  However, if the ALJ had applied the higher age category, grid rule 202.06 would have directed a finding of disabled.  *See* 20 C.F.R. 404, Subpt. P., App. 2, Rule 202.06.  Thus, if the ALJ had considered the borderline situation and decided that application of the older age category was more appropriate, the vocational expert testimony could not be used to rebut the conclusive finding directed by the grids that Plaintiff was disabled and therefore it could not constitute substantial evidence supporting a determination of non-disability.

The Court recognizes that some courts within the Fifth Circuit have held that in similar circumstances as presented in this case, the vocational expert's testimony has been found sufficient to support the ALJ's decision not to place Plaintiff in the older age category.  Such opinions, however, have assumed—without addressing whether there is any evidence in the record to so indicate—that the ALJ recognized, considered, and exercised its discretion to not apply the older age category.  In *Singleton*, the court recognized that the claimant presented a borderline situation, which the ALJ was required to consider but not required to explain, and found the ALJ's reliance on the testimony of a vocational expert sufficient to enable the reviewing court to determine whether the ALJ's decision to not use an older age category was supported by substantial evidence.  *See Singleton*, 2013 WL 460066.

The court in *Singleton* also cited to *Fosha*, *Stout*, and *Bowie*.  *Singleton*, 2001 WL 502506 at *8-9.  In *Fosha*, the court found that Fosha's actual age clearly fit in the "closely approaching advanced age" category at the relevant time period, noted that the ALJ's decision to place him in the

higher category is discretionary and entitled to considerable deference, and found that the ALJ's disability determination, supported by vocational expert testimony, was therefore supported by substantial evidence. *Fosha*, 372 F.Supp.2d at 956-57.  The court did not address whether there was evidence that the ALJ had actually recognized and considered the borderline situation. *See id.*

In *Stout*, the court noted that the ALJ had not relied on vocational expert testimony when the court remanded the case for further consideration, noting that the ALJ did not appear to be aware of his discretion to categorize plaintiff in an older age grouping and made no specific mention of a borderline-age issue, suggesting that had the ALJ relied on vocational expert testimony, the court's decision may have been different. *Stout*, 2012 WL 1020179 at *11.

In *Flores*, the court found that the ALJ acknowledged the regulation regarding borderline age situations and noted that Flores was 49 years of age, classified as a "younger person"  and was soon to be 50 years of age, which would classify him as "closely approaching advanced age", and found that the ALJ's failure to provide an analysis as to whether the older age category should be applied was not a fatal omission because the ALJ did not rely mechanically upon the grid rules but elicited vocational expert testimony.  *Flores*, 2010 WL 3858173.

At least two courts in the Fifth Circuit, however, have recently decided that where there is no indication in the record that the ALJ considered and exercised discretion to not apply the higher age category in a borderline age situation, reliance on vocational expert testimony that there are other jobs that the claimant can perform, which otherwise would be sufficient to support the ALJ's disability determination, is insufficient to satisfy the court that the ALJ's decision applied the appropriate legal standards and is therefore an insufficient basis on which to affirm the Commissioner's decision. *See Manning*, 2014 WL 266417; Horsley, 2014 WL 1213467; *Horsley*,

2014 WL 1213467.  The court in *Manning* reasoned that without being able to determine from the record that the ALJ considered the borderline age issue, the court could not conclude that the ALJ's decision is supported by substantial evidence.  *Manning*, 2014 WL 266417.

Like the courts in *Manning* and *Horsley*, this Court is unable to conclude that the ALJ considered the borderline age situation as required by the regulations, and because application of the older age category would change the outcome of this case, the Court is unable to conclude that such error was harmless.  Under the circumstances of this case, the Court cannot conclude that the ALJ's decision is supported by substantial evidence.  Therefore, the Court vacates the Commissioner's decision and remands this matter for further proceedings consistent with this memorandum opinion.

## **CONCLUSION**

For the reasons stated above, the Court hereby **ORDERS** that the decision of the Commissioner be **REVERSED** and the cause **REMANDED** to the Commissioner for further administrative proceedings consistent with this opinion.

**SIGNED** and **ENTERED** on October 7, 2014.

_____
ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE